IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

K. TERRELL HUTCHINS          :          CIVIL ACTION
                             :
         v.                  :
                             :
MOUNTAIN RUN SOLUTIONS, LLC  :          NO. 20-5853
et al.

MEMORANDUM

Bartle, J.                              November 17, 2021

        Plaintiff K. Terrell Hutchins brings this action

against defendant Mountain Run Solutions, LLC, a debt collector,

for compensatory and punitive damages and declaratory relief

under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681,

et seq., and the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C. §§ 1692, et seq.[1]  Specifically, plaintiff alleges that

Mountain Run has failed to comply with the FCRA by not properly

investigating a disputed debt incorrectly attributed to

plaintiff in violation of Mountain Run's duties under 15 U.S.C.

§ 1681s-2(b) and that Mountain Run has violated the FDCPA by

communicating false credit information as prohibited by

15 U.S.C. § 1692e(8).

_____

1.   Plaintiff also brought suit against defendant Experian
Information Solutions, Inc., a consumer reporting agency.
Experian was dismissed from this action with prejudice on
October 20, 2021 pursuant to a settlement.

Plaintiff filed suit on November 20, 2020 and
personally served Mountain Run with the summons and complaint on
December 1, 2020.  Plaintiff also served Mountain Run via
certified mail on January 8, 2021.  Mountain Run failed to enter
an appearance or answer the complaint.  The Clerk of Court
entered default against Mountain Run on January 27, 2021.

Before the court is the motion of plaintiff for entry
of default judgment with respect to damages pursuant to Rule
55(b) of the Federal Rules of Civil Procedure.  The court held a
hearing on the issue of damages at which plaintiff, his father,
and his girlfriend testified.  The court now makes the following
findings of fact and conclusions of law.

I

Plaintiff is a young attorney with a New York law
firm.  Originally from Philadelphia, he worked hard to put
himself through college at Pennsylvania State University and
then law school at St. John's School of Law.  He has been in a
serious relationship with his long-time girlfriend, Jina Prince,
an elementary school teacher in Maryland, for a number of years.
They look forward to settling down and starting a family one
day.  Plaintiff's position at a law firm with a salary of
$180,000 for the first time provides him with significant income
and an opportunity to build up a good credit history.

In May 2020, upon inspection of his credit report from Experian, plaintiff became aware of a $4,019 debt listed by Mountain Run for a home alarm system.  The debt was incorrectly attributed to plaintiff.  The debt was incurred by plaintiff's father, Kelly T. Hutchins, who has the same name as plaintiff, although plaintiff goes by K. Terrell Hutchins.  His father, who is thirty years older than plaintiff, has a different date of birth, a different social security number, and a different home address from plaintiff at the time.  His father lives in Philadelphia while plaintiff was residing in New York. Plaintiff sent letters dated May 15, 2020, July 6, 2020, and September 2, 2020 to Experian requesting that it notify Mountain Run that a dispute on the debt exists and that it ask Mountain Run to investigate the dispute.  Plaintiff also orally contacted Mountain Run to correct the inaccurate information.

Experian transmitted plaintiff's disputes to Mountain Run via its Automated Consumer Dispute Verification ("ACDV") system on three separate occasions.  On June 12, 2020, Experian described the reason for the dispute as "Not his/hers.  Provide complete ID" and informed Mountain Run that plaintiff claimed the debt and the underlying contract for that debt were entered into by his father who shares the same name and that plaintiff never signed a contract related to this account or authorized a payment that was the basis for the reported debt.

On June 16, 2020, Experian again notified Mountain Run
of the dispute on the debt and described the dispute as "Not
his/hers.  Provide complete ID."  In its September 14, 2020
notification to Mountain Run, Experian described the dispute as
"Belongs to another individual with same/similar name.  Provide
complete ID."  Mountain Run responded to each notification
either the same day or within a few days and each time gave the
response that "Account information accurate as of date
reported."

In June 2020, plaintiff sought financing to make his
first big financial purchase, his dream car, a used Range Rover.
However, plaintiff was denied credit.  He was informed that
there was a red flag on his account because of the outstanding
debt in issue.  On June 20, 2020 plaintiff was notified by his
financial institution, Police and Fire Federal Credit Union
("PFFCU"), that it would not grant a loan to plaintiff for the
same reason.  PFFCU had previously extended him credit.  This
notice from PFFCU occurred after Mountain Run had twice been
notified that plaintiff disputed the debt and that Mountain Run
should verify the identification.

At the hearing on damages, plaintiff testified to the
humiliation and embarrassment he felt when he was told at the
car dealership that financing had been denied because of bad
credit and again by his own financial institution with whom he

4

had consistently made timely student loan payments.  Plaintiff was humiliated after he worked hard and saved up money as a new attorney to purchase his dream car and had built a rapport with the salesman only to be told his credit was denied.  Plaintiff was distressed by this inaccurate portrayal of who he is to the salesman and creditors.

Plaintiff made written and oral efforts to contact Experian and Mountain Run.  Mountain Run, however, failed to take any steps to resolve the dispute.  This left plaintiff with feelings of hopelessness and despair as the problem dragged on after he had done all he could to build a stable financial situation for himself and to resolve the inaccurate debt on his report.

Once Mountain Run verified the debt as plaintiff's for the third time, he became anxious that, despite his best efforts, this would never be resolved and that it would continue to impact him as he tried to move forward as a young adult making important financial decisions.  Plaintiff wants to buy a car and a house so that he and Ms. Prince, a schoolteacher, can get married and start a family in which he, as an attorney, would be the primary earner.  However, plaintiff feels as if that part of his life is on hold since he is unable to build up credit for these major life transitions.

As a result, plaintiff feels trapped and experiences
this stress in his body through sweating, tightness in his neck,
and headaches.  He has lost sleep over this problem and takes
Aleeve or Tylenol to help with the physical pain.

Plaintiff's father, Kelly Hutchins, witnessed
plaintiff start to change by becoming stressed and experiencing
headaches and back aches when plaintiff began to challenge this
debt.  Plaintiff's girlfriend, Ms. Prince, saw plaintiff
experience many sleepless nights as he stressed over this debt
and spent much of his free time on the weekends making calls and
writing letters to rectify the matter instead of spending their
rare free time together.  She stated that it has been difficult
for them to move forward because credit is so important as an
adult.

II

Congress passed the FCRA to "promote efficiency in the
nation's banking system and to protect consumer privacy."
Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010).
The FCRA prohibits a person[2] from furnishing information to a
consumer reporting agency if that person knows the information
is inaccurate and also requires that the person conduct an

---

2.   A "person" as defined in the FCRA includes, in part, "any
individual, partnership, [or] corporation."  15 U.S.C.
§ 1681a(b).

6

investigation into disputed information and correct if it is inaccurate.  15 U.S.C. § 1681s-2.  It also provides for civil liability for noncompliance due to negligence, 15 U.S.C. § 1681o, and willfulness, 15 U.S.C. § 1681n.  Punitive damages, in addition to actual damages, are permitted in an action under the FCRA if a person "willfully fails to comply with any requirement" imposed by the Act.  15 U.S.C. § 1681n(a).

Similarly, the FDCPA was enacted to "protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  A debt collector is prohibited under the FDCPA from communicating to anyone "credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."  15 U.S.C. § 1692e(8).

By failing to answer or appear, Mountain Run has conceded plaintiff's allegations in his complaint, including those in Count I that aver that Mountain Run willfully and/or negligently violated the FCRA by failing to investigate plaintiff's dispute of the debt for $4,019 and by reporting false credit information about plaintiff after proper notice of this inaccuracy.  Mountain Run knew of plaintiff's dispute and was alerted on multiple occasions by Experian of the need to investigate the matter further but failed to investigate or correct the disputed debt.  Plaintiff seeks actual and punitive damages.

7

Mountain Run has also conceded plaintiff's allegations in Count III that it violated the FDCPA by communicating information it knows to be false after plaintiff disputed the debt and attempted to prove that the debt was attributed to the wrong person.[3]  On this count, plaintiff seeks actual damages.

The court therefore turns to the issue of damages. Our Court of Appeals has explained that "damages for violations of the FCRA allow recovery for humiliation and embarrassment or mental distress even if the plaintiff has suffered no out-of-pocket losses." Cortez, 617 F.3d at 719.  In addition, "[t]ime spent trying to resolve problems with the credit reporting agency may also be taken into account." Id.  Medical testimony or evidence of a specific injury is not necessary to recover damages. Id. at 720.  Rather, the court explained that "stress and anxiety caused by the defendant's conduct . . . . is precisely the kind of injury that Congress must have known would result from violations of the FCRA." Id.

Plaintiff seeks $180,000 total in compensatory damages under the FCRA and FDCPA.  Plaintiff suffered humiliation and embarrassment when he was denied financing from multiple institutions to purchase a car.  He has experienced anxiety, distress, and overall hopelessness that this inaccurate debt on

---

3.   Count II relates to Experian and has therefore been dismissed as part of the settlement with that defendant.

his credit report will persist despite multiple attempts to have it corrected.  Plaintiff has attempted to resolve this issue for over a year and a half while wasting much time and incurring much stress and anxiety in the process.

This bad debt has prevented him from buying a car or a house in order to eventually start a family.  Good credit, particularly at plaintiff's stage of life, is essential in establishing a stable financial position and reputation.  This debt has also damaged his reputation.

Plaintiff's anxiety and stress have caused headaches, tightness, sweating, and sleeplessness.  Plaintiff's father and girlfriend have both witnessed the toll the stress and frustration have taken on plaintiff.

Stress on the consumer as a result of false reporting of debt is exactly the kind of injury the FCRA was passed to address.  See Cortez, 617 F.3d at 719.  The court finds that plaintiff has established that he is entitled to compensatory damages in the total amount of $180,000 under the FCRA and FDCPA.

Plaintiff also seeks punitive damages against Mountain Run under the FCRA.  While compensatory damages are intended to redress the concrete loss plaintiff suffered, "punitive damages serve a broader function; they are aimed at deterrence and retribution."  State Farm Mut. Auto. Ins. Co. v. Campbell, 538

U.S. 408, 416 (2003).  The FCRA allows for "such amount of
punitive damages as the court may allow" in instances of willful
noncompliance.  15 U.S.C. § 1681n.  Willful violations occur
when there are "knowing violations of the statute" as well as
"reckless disregard" for the statute's terms.  Seamans v. Temple
Univ., 744 F.3d 853, 868 (3d Cir. 2014).

Mountain Run acted willfully by refusing to
investigate and remove the debt incorrectly associated with
plaintiff.  Plaintiff on numerous occasions provided Mountain
Run with sufficient information to demonstrate that he was not
the party responsible for the debt.  Mountain Run either
intentionally ignored this information or it acted with reckless
disregard to its duties under the FCRA to not provide
information it knew to be incorrect and to remedy disputed
information.  See 15 U.S.C. § 1618s-2.  Mountain Run's willful
noncompliance allows for punitive damages here.  Moreover,
punitive damages will serve as a deterrence to Mountain Run's
conduct in persistently ignoring evidence from a consumer that
the credit information is incorrect and failing to investigate
and correct that disputed information.

While there is no exact formula for an appropriate
punitive damages award, the Supreme Court has found that "few
awards exceeding a single-digit ratio between punitive and
compensatory damages, to a significant degree, will satisfy due

process." Campbell, 538 U.S. at 425. Our Court of Appeals affirmed the granting of $50,000 in compensatory damages in 2010 and $100,000 in punitive damages under the FCRA and found that $100,000 "does not even begin to approach the outer limit of punitive damages 'aimed at deterrence and retribution' allowed by the Constitution." Cortez, 617 F.3d at 723 (quoting Campbell, 538 U.S. at 416). It explained that "[a]n award that is twice the compensatory damages award falls well within the Supreme Court's standard for ordinary cases of a single-digit ratio." Id. at 723-24.

The Supreme Court has laid out three guideposts for evaluating punitive damages: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages award by the jury and the civil penalties authorized or imposed in comparable cases." Campbell, 538 U.S. at 418.

When determining the reprehensibility of the defendant's misconduct as relates to the first guidepost, a court should consider the following:

> the harm caused was physical as opposed to
> economic; the tortious conduct evinced an
> indifference to or a reckless disregard of
> the health or safety of others; the target
> of the conduct had financial vulnerability;

11

> the conduct involved repeated actions or was
> an isolated incident; and the harm was the
> result of intentional malice, trickery, or
> deceit, or mere accident.

Id. at 419.

Mountain Run's misconduct was undoubtedly reprehensible.  As noted above, it has taken a serious physical toll on plaintiff and has endangered his credit in an age where credit standing is all-important.

The second guidepost looks to the disparity between the actual harm suffered and the punitive damages award.  A one-to-one ratio of compensatory and punitive damages is appropriate and does not violate any due process concerns.  It is well within the single-digit ratio guidelines provided for by the Supreme Court.

As for the third guidepost which examines the difference between a jury punitive damages award and penalties in similar cases, our Court of Appeals has explained that this guidepost is "not useful in the analysis of punitive damages here as there is no 'truly comparable' civil penalty to a FCRA punitive damages award."  Cortez, 617 F.3d at 724.

Accordingly, this court finds that plaintiff is entitled to an additional $180,000 in punitive damages.